# Exhibit 2

## LOUISIANA CIVIL CASE REPORTING
### Civil Case Cover Sheet - LA. R.S. 13:4688 and
### Part G, §13, Louisiana Supreme Court General Administrative Rules

This civil case cover sheet shall be completed by counsel for the petitioner, counsel's authorized representative, or by the self-represented litigant (if not represented by counsel) and submitted with the original petition filed with the court. The information should be the best available at the time of filing. This information does not constitute a discovery request, response or supplementation, and is not admissible at trial.

**Suit Caption:**

Filed by: Fax
Date: 7-8-20
Time: 10:07 AM
Deputy Clerk: _____
(SEE ATTACHED LOG)

*ong recd na mail*

FILED FOR RECORD 07/13/2020 14:41:55
Randi H. Prisco, DY CLERK
JEFFERSON PARISH, LA

Debra Bodden                         vs.   Pfizer, Inc., et al

**Court:** 24th Judicial District

**Docket Number:** 808-090 C

**Parish of Filing:** Jefferson

**Filing Date:** July 8, 2020

**Name of Lead Petitioner's Attorney:** Patrick G. Kehoe, Jr.

**Name of Self-Represented Litigant:** _____

**Number of named petitioners:** 1          **Number of named defendants:** 8

**Type of Lawsuit: Please check the categories which most appropriately apply to this suit (no more than 3 categories should be checked):**

- ☐ Auto: Personal Injury
- ☐ Auto: Wrongful Death
- ☐ Asbestos: Property Damage
- ☑ Product Liability
- ☐ Intentional Bodily Injury
- ☐ Intentional Wrongful Death
- ☐ Business Tort
- ☐ Defamation
- ☐ Environmental Tort
- ☐ Intellectual Property
- ☐ Legal Malpractice
- ☐ Other Professional Malpractice
- ☐ Maritime
- ☐ Wrongful Death
- ☐ General Negligence

- ☐ Auto: Property Damage
- ☐ Auto: Uninsured Motorist
- ☐ Asbestos: Personal Injury/Death
- ☐ Premise Liability
- ☐ Intentional Property Damage
- ☐ Unfair Business Practice
- ☐ Fraud
- ☐ Professional Negligence
- ☐ Medical Malpractice
- ☐ Toxic Tort
- ☐ Other Tort (describe below)
- ☐ Redhibition
- ☐ Class action (nature of case)

**Please briefly describe the nature of the litigation in one sentence of additional detail:**



Following the completion of this form by counsel, counsel's representative, or by the self-represented litigant, this document will be submitted to the Office of the Judicial Administrator, Supreme Court of Louisiana, by the Clerk of Court.

Name, address and contact information of person completing form:

Name Patrick G. Kehoe, Jr.          Signature _____

Address 3524 Canal Street, New Orleans, LA 70119

Phone number: 504-588-1110          E-mail address: pgkehoejr@kehoejr.com

Filed by: Fax
Date: 7-8-20
Time: 10:07 A.M.
Deputy Clerk: _____
(SEE ATTACHED LOG)

orig rec'd via mail

835

FOR RECORD 07/13/2020 14:33:09
Randi P. Frisco, DY CLERK
JEFFERSON PARISH, LA

**24ᵗʰ JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.: **808-090**      DIVISION "**C**"      SECTION "   "

**DEBRA BODDEN**

**VERSUS**

**PFIZER, INC., BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.
SANOFI, CHATTEM, INC., SANOFI US SERVICES, INC., SANOFI-AVENTIS, U.S.,
LLC, GLAXOSMITHKLINE, PLC AND GLAXOSMITHKLINE, LLC**

FILED:_____      _____
                                                                          **DEPUTY CLERK**

<u>**PETITION FOR DAMAGES**</u>

The petition of **Debra Bodden**, person of the full age of majority and resident of the Parish

of Jefferson, State of Louisiana, does with respect represent:

1.

That made Defendant herein is:

a.   **Pfizer Inc.** is a Delaware corporation with its principal place of business located at 235 East 42nd Street, New York, New York 10017. Defendant **Pfizer, Inc.** controlled the rights to Zantac in the United States until 2006. During that time period, it manufactured and distributed the drug in the United States.

b.   **Boehringer Ingelheim Pharmaceuticals, Inc.** is a Delaware corporation with its principal place of business 900 Ridgebury Road, Ridgefield, Connecticut 06877. Defendant **Boehringer Ingelheim Pharmaceuticals, Inc.** controlled the rights to Zantac in the United States from 2006 to 2017. During that time period, it manufactured and distributed the drug in the United States.

c.   **Sanofi**, also known as Sanofi Consumer Healthcare, formerly known as Sanofi S.A., formerly known as Sanofi-Aventis, is a French corporation with its principal place of business located at 54, Rue La Boétie, 8me arrondissement, Paris, France.

d.   **Chattem, Inc.** is a Tennessee corporation with its principal place of business located at 1715 West 38th Street Chattanooga, Tennessee 37409. It is a wholly-owed subsidiary of **Sanofi.**

e.   **Sanofi US Services Inc.** is a Delaware corporation with its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. It is a wholly-owned subsidiary of **Sanofi.**

f.   **Sanofi-Aventis U.S. LLC** is a Delaware limited liability company with its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. It is a wholly-owned subsidiary of **Sanofi**. Defendants **Chattem, Inc.; Sanofi U.S. Services Inc.; and Sanofi-Aventis U.C. LLC** currently control the rights to Zantac in the United States. They manufactured and distributed the drug in the United States.

-1-

g.   **Glaxosmithkline, PLC** is a United Kingdom public limited company. It is the successor-in-interest to companies that initially developed ranitidine.

h.   **Glaxosmithkline, LLC** is a Delaware limited liability company with its principal place of business located at 5 Crescent Drive, Philadelphia, Pennsylvania 19112 and 5 Moore Drive, Research Triangle, North Carolina 27709. Defendant **Glaxosmithkline, LLC** is a wholly-owned subsidiary of Defendant **Glaxosmithkline, PLC**.

2.

Plaintiff, **Debra Bodden**, began taking Zantac since at least 2009 in order to relieve frequent heartburn based on the advertisement of the drug. Plaintiff took this medication approximately four times per week for over a ten year period. Plaintiff developed and was treated for pancreatic cancer, including hospitalization and surgery in 2017, and must now undergo persistent medical monitoring for her entire life due to the undisclosed risks of cancer. Had plaintiff known about the cancer risks associated with and cancer caused by Zantac, plaintiff would not have purchased or used this medication.

3.

Zantac is the brand name of a popular drug containing the active ingredient ranitidine. Zantac products include Zantac 75, Zantac 150, and many others. The drug is used to treat stomach and intestine ulcers as well as heartburn and acid reflux.

4.

Zantac is one of the best-selling drugs in American history. It was the first drug to ever reach $1 billion in sales. In 2018, despite competition from generic competitors, Zantac 150 sales totaled more than $100 million.

5.

Zantac has been on the market for more than thirty years. The FDA approved Zantac for prescription use in 1983. It was later approved for over-the-counter use in 1996. Beginning in 1997, generic versions of ranitidine became available to the public.

6.

N-nitrosodimethylamine (NDMA) has been a suspected carcinogen since before Zantac came onto the market. In 1974, the Occupational Safety and Health Administration listed NDMA as a potential occupational carcinogen.[1]

---

[1] https://www.cdc.gov/niosh/npg/nengapdxb.html.

7.

NDMA has been classified as a probable human carcinogen by a number of other reputable organizations, including the Environmental Protection Agency[2] and the World Health Organization.[3] It is listed as a priority toxic pollutant under Clean Water Act regulations.  40 C.F.R. § 131.36.

8.

Numerous academic studies also recognized the carcinogenic properties of NDMA. For example, a 2014 paper stated that NDMA "has been demonstrated to be a potent carcinogen."[4]

9.

Similarly, the EPA has noted, "In animal studies of various species including rats and mice, exposure to NDMA has caused tumors primarily of the liver, respiratory tract, kidney and blood vessels."[5]

10.

Aside from cancer, overexposure to NDMA can cause liver damage, an enlarged liver, reduced liver function, reduce kidney function, and reduced lung function, among other effects.[6]

11.

Ranitidine has a chemical structure that leaves it prone to formation of NDMA. Academic articles have observed the "high formation yield of NDMA from ranitidine during chloramination."[7] Another article found that patients who took ranitidine later exhibited huge spikes in NDMA in urine samples.[8]

---

[2]https://www.epa.gov/sites/production/files/2014-03/documents/ffrrofactsheet_contaminant_ndma_january2014_final.pdf.

[3]https://www.who.int/water_sanitation_health/dwq/chemicals/ndmasummary_2ndadd.pdf.

[4]Dong Liu et al., Formation Mechanism of NDMA from Ranitidine, Trimethylamine, andOther Tertiary Amines During Chloramination: A Computational Study,https://pubs.acs.org/doi/pdf/10.1021/es500997e.

[5]https://www.epa.gov/sites/production/files/2014-03/documents/ffrrofactsheet_contaminant_ndma_january2014_final.pdf.

[6]*Id.*

[7]Dong Liu et al., Formation Mechanism of NDMA from Ranitidine, Trimethylamine, and Other Tertiary Amines During Chloramination: A Computational Study, https://pubs.acs.org/doi/pdf/10.1021/es500997e.

[8]Teng Zeng & William A. Mitch, Oral Intake of Ranitidine Increases Urinary Excretion of N-Nitrosodimethylamine, https://academic.oup.com/carcin/article/37/6/625/1744630.

12.

On September 13, 2019, the FDA alerted the public that NDMA was found in samples of

Zantac. In a press release, the FDA wrote: The U.S. Food and Drug Administration has learned that

some ranitidine medicines, including some products commonly known as the brand-name drug

Zantac, contain a nitrosamine impurity called N-nitrosodimethylamine (NDMA) at low levels.

NDMA is classified as a probable human carcinogen (a substance that could cause cancer) based on

results from laboratory tests.[9]

13.

The FDA asked companies to conduct their own laboratory testing of the drug and advised

them to recall the drug if testing showed levels of NDMA above the acceptable daily intake (96

nanograms per day or 0.32 parts per million).[10]

14.

Shortly after the FDA's September 13, 2019 press release, major companies began to

voluntarily recall the drug. On September 24, 2019, 14 lots of ranitidine capsules distributed by

Sandoz were voluntarily recalled.[11] On September 26, 2019, major pharmacies Walgreens, Walmart,

and Rite-Aid recalled over-the-counter ranitidine.[12]

15.

On October 18, 2019, Defendant Sanofi US Services Inc. voluntarily recalled Zantac:

> As a precautionary measure, Sanofi on Friday, October 18, initiated
> a voluntary recall of all Zantac OTC (over-the-counter) in the United
> States. This includes Zantac 150®, Zantac 150® Cool Mint, and
> Zantac 75®. Zantac tablets are an oral, over-the-counter product to
> prevent and relieve heartburn associated with acid ingestion and sour
> stomach.
>
> On September 13, 2019, the U.S Food and Drug Administration
> issued a public statement alerting that some ranitidine medicines,
> including Zantac OTC, could contain NDMA at low levels and asked
> manufacturers to conduct testing.

---

[9] https://www.fda.gov/news-events/press-announcements/statement-alerting-patients-andhealth-care-profess ionals-ndma-found-samples-ranitidine.

[10] https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-pressannouncements-ndma-zanta c-ranitidine.

[11] https://www.fda.gov/news-events/press-announcements/fda-announces-voluntary-recallsandoz-ranitidine-c apsules-following-detection-impurity.

[12] https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-pressannouncements-ndma-zanta c-ranitidine.

Evaluations are ongoing on both drug substance (active ingredient) and finished drug product. Due to inconsistencies in preliminary test results of the active ingredient used in the U.S. products, Sanofi has made the decision to conduct the voluntary recall as the investigation continues.[13]

16.

For the next several months, many more companies voluntarily decided to recall Zantac, citing unacceptable levels of NDMA.[14]

17.

The carcinogenic effects of NDMA had long been observed. Additionally, many scientists had recognized the propensity for Zantac to cause formation of NDMA in humans. Thus Defendants, as manufacturers and distributors of Zantac, knew or had reason to know of the link between Zantac, NDMA, and cancer.

18.

Defendants heavily marketed Zantac and other products containing ranitidine. This marketing included traditional marketing media (such as television), as well as representations contained on drug labels.

19.

Defendants did not disclose the link between Zantac and NDMA to patients. Such a disclosure was not included on product labels, in advertisements, or in other communications between Defendants and potential customers.

20.

Defendants also did not disclose the link between Zantac and NDMA to physicians or pharmacists.

21.

Drug manufacturers must submit an annual report to the FDA. 21 C.F.R. §314.81(b)(2). This report must include drug safety information. Despite that requirement, Defendants did not report the link between Zantac and NDMA to the FDA.

---

[13]https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/sanofi-providesupdate-precautionary-voluntary-recall-zantac-otc-us.

[14]https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-pressannouncements-ndma-zantac-ranitidine.

22.

To the contrary, Defendants continued to represent to patients, physicians, pharmacists, and the general public that Zantac was safe and effective for its indicated uses.

23.

For many years after the connections between Zantac, NDMA, and cancer were established, Defendants continued to manufacture, distribute, and market Zantac in the United States.

24.

Defendants' continued promotion of Zantac after they knew of its health risks demonstrate that Defendants' representations and omissions were made with the intent to defraud patients, physicians, pharmacists, and the general public. These statements and omissions were made with knowledge of their falsity and their likelihood to deceive.

25.

Plaintiff suffered, and continues to suffer, medical injury as a result of Defendants' actions.

26.

Plaintiff has been exposed to numerous health risks, some of which may not have manifested themselves, and which can be detected through a program of medical monitoring.

27.

That as a result of the above negligence, your Petitioner, **DEBRA BODDEN**, sustained the following injuries:

a.     Pancreatic cancer with surgery and hopitalization.

b.     Other injuries, physical, psychological, and emotional to be described with particularity upon the trial of this matter.

28.

That as a result of the above negligence, your Petitioner, **DEBRA BODDEN**, suffered the following damages for which she is entitled to recover from the defendant, in solido, in amounts that will be shown through discovery and proven at trial:

> Past, present and future medicine, drugs, hospitalization, medical care, attendant and support care, loss wages, loss of wage earning capacity, pain and suffering, residual disabilities, mental anguish, emotional upset and distress, loss of enjoyment of life, loss of personal services, attendant care and other psychological sequelae.

Your Petitioner prays for those damages that are just and reasonable under the facts and circumstances of this case.

29.

Defendants had a duty to Plaintiff to exercise reasonable care in the manufacture, distribution, labeling, and marketing of Zantac and other ranitidine medications.

30.

Defendants manufactured, distributed, labeled, and marketed Zantac and other ranitidine medications. They did so when they knew or should have known of the link between Zantac and NDMA and the carcinogenic effects of NDMA. Yet Defendants continued to promote these harmful medications while failing to disclose the serious harm they could create.

31.

Defendants' actions and omissions directly and foreseeably caused harm to Plaintiff.

32.

Defendants designed, manufactured, marketed, promoted, sold, supplied and/or distributed Zantac.

33.

Defendants have a duty to use reasonable care to design a product that is reasonably safe for its intended use to prevent defects that constitute a substantial risk of foreseeable injury to persons using its products. Moreover, manufacturers stand in a superior position over consumers about knowledge of, or the ability to discover and prevent, defects.

34.

Zantac is defective in design and/or formulation due to its inherent risks of producing the carcinogen NDMA, thereby rendering the drug unreasonably dangerous. Zantac is defective because the drug is made up of an inherently unstable ranitidine molecule that contains both a nitrate and a dimethylamine ("DMA") group that combine to form a known carcinogen (NDMA), which can lead to the development of cancer.

35.

Defendants had a duty to design Zantac to prevent it from reacting with itself to produce the carcinogen NDMA. This defect in design and/or formulation existed at the time the drug left Defendants' possession and at the time it was sold to Plaintiff.

-7-

36.

Zantac was expected to and did reach Plaintiff without a substantial change in condition in which it was sold.

37.

At the time Zantac left Defendants' possession, an average consumer could not reasonably anticipate the dangerous nature of Zantac nor fully appreciate the attendant risk of injury associated with it use, including the risk of developing cancer.

38.

At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Zantac products, which are defective and unreasonably dangerous to consumers, including Plaintiff, thereby placing Zantac products into the stream of commerce. These actions were under the ultimate control and supervision of Defendants.

39.

At all relevant times, Defendants' Zantac products reached the intended consumers, handlers, and users or other persons coming into contact with these products within this judicial district and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

39.

Defendants' Zantac products were defective in design and formulation, in one or more of the following ways:

a.   When placed in the stream of commerce, Defendants' Zantac products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

b.   When placed in the stream of commerce, Defendants' Zantac products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner;

c.   When placed in the stream of commerce, Defendants' Zantac products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

d.   Defendants did not sufficiently test, investigate, or study its Zantac products and, specifically, the ability for Zantac to transform into the carcinogenic compound NDMA within the human body;

e.      Exposure to Zantac products presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the drug;

f.      Defendants knew or should have known at the time of marketing Zantac products that exposure to Zantac could result in cancer and other severe illnesses and injuries;

g.      Defendants did not conduct adequate post-marketing surveillance of its Zantac products; and

h.      Defendants could have employed safer alternative designs and formulations.

40.

Defendants have engaged in the business of selling, distributing, supplying, manufacturing, marketing, and/or promoting Zantac, and through that conduct have knowingly and intentionally placed Zantac into the stream of commerce with full knowledge that it reaches consumers such as the Plaintiff.

41.

At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user at the time it was distributed by Defendants and used by the Plaintiff. The defective condition of Zantac was due in part to the fact that it was not accompanied by proper warnings regarding the possible side effect of developing cancer as a result of its use.

42.

This defect caused serious injury to the Plaintiff, who used Zantac in its intended and foreseeable manner.

43.

Defendants had a duty to properly label their product.

44.

Defendants negligently and recklessly labeled, distributed, and promoted Zantac, making it dangerous and unsafe for the use and purpose for which it was intended.

45.

Defendants negligently and recklessly failed to warn of the nature and scope of the side effects associated with Zantac, namely its potential to cause cancer.

46.

Defendants were aware of the probable consequences of the aforesaid conduct.  Despite the

fact that Defendants knew or should have known that Zantac caused serious injuries, they failed to exercise reasonable care to warn of the dangerous side effect of developing cancer from Zantac use, even though this side effect was known or reasonably scientifically knowable at the time of distribution.

47.

Plaintiff was unaware of the cancer risks associated with Zantac and could not have discovered that risk through the exercise of reasonable care.

48.

Defendants, as the manufacturers and/or distributors of the subject product, are held to the level of knowledge of an expert in the field.

49.

Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of Defendants.

50.

Had Defendants properly disclosed the risks associated with Zantac, including cancer, Plaintiff would not have used Zantac.

51.

Defendants manufactured, distributed, labeled, and marketed Zantac and other ranitidine medications. They did so when they knew or should have known of the link between Zantac and NDMA and the carcinogenic effects of NDMA. Yet Defendants continued to promote these harmful medications while failing to disclose the serious harm they could create.

52.

Defendants expressly warranted that Zantac and other ranitidine medications were safe and effective. These warranties came in one or more of the following forms:

a.  Publicly made written and verbal assurances of safety;

b.  Press releases, media dissemination, or uniform promotional information intended to create demand for Zantac, but which contained misrepresentations and failed to warn of the risks of using the product;

c.  Verbal assurances made by Defendants' marketing personnel about the safety of Zantac, which also downplayed the risks associated with the product; and

d.  False, misleading, and inadequate written information and packaging supplied by Defendants.

-10-

53.

Defendants manufactured, distributed, labeled, and marketed Zantac and other ranitidine medications. They did so when they knew or should have known of the link between Zantac and NDMA and the carcinogenic effects of NDMA. Yet Defendants continued to promote these harmful medications while failing to disclose the serious harm they could create.

54.

Defendants impliedly warranted that Zantac and other ranitidine medications were safe and effective.

55.

Plaintiff was foreseeable user of Zantac.

56.

At the time Defendants marketed, sold, and distributed Zantac, Defendants knew of the intended use of the drug, impliedly warranted the drug to be fit for a particular purpose, and warranted that the drug was of merchantable quality and effective for such use.

57.

Defendants knew or had reason to know that Plaintiff would rely on Defendants' judgment and skill in providing Zantac for its intended use.

58.

Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Zantac was of merchantable quality, safe, and effective for its intended use.

59.

Contrary to Defendants' implied warranties, Zantac is neither of merchantable quality, nor safe or effective for its intended use, because it unreasonably dangerous, defective, unfit, and ineffective for the ordinary purposes for which it was sold.

60.

Plaintiff could not have discovered that Defendants breached their warranty or the danger in using Zantac.

61.

As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff suffered serious injuries and/or side effects, including cancer.

**WHEREFORE**, Petitioner, **Debra Bodden**, prays that the Defendants be duly cited and served with a copy of the petition for damages and that after due proceedings are had that there be judgment herein in her favor and against the Defendants, **Pfizer, Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Sanofi, Chattem, Inc., Sanofi US Services, Inc., Sanofi-Aventis, U.S., LLC, Glaxosmithkline, PLC and Glaxosmithkline, LLC** jointly, severally and in solido, in an amount sufficient to compensate petitioner for the damages she sustained in addition to legal interest thereon from the date of judicial demand until paid, and all costs of these proceedings and for general and equitable relief.

Respectfully submitted,

_____
PATRICK G. KEHOE, JR. #14419
3524 Canal Street
New Orleans, LA 70119
Telephone # (504) 588-1110
Facsimile # (504) 588-1954

**PLEASE SERVE:**

**PFIZER, INC.**
Through its Agent for Service of Process
C T Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

CK# 20501
$106.08 E.B.R.S.

**BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.**
900 Ridgebury Road
Ridgefield, CT 06877

**SANOFI**
Through the Hague Service Convention

**CHATTEM, INC.**
Through its Agent for Service of Process
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**SANOFI US SERVICES, INC.**
55 Corporate Drive
Bridgewater, New Jersey 08807

**SANOFI-AVENTIS, U.S., LLC**
55 Corporate Drive
Bridgewater, New Jersey 08807

**GLAXOSMITHKLINE, PLC**
Through the Hague Service Convention

**GLAXOSMITHKLINE, LLC**
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

808-0910



PRIORITY MAIL

NEOPOST
07/09/2020
US POSTAGE $008.25⁰

ZIP 70113
04L10257394

24ᵗʰ Judicial District Court
Parish of Jefferson
P. O. Box 10
Gretna, LA 70054

Patrick G. Kehoe, Jr.
Attorney at Law
3524 Canal Street
New Orleans, LA 70119

6372

# PATRICK G. KEHOE, JR.
**A Professional Law Corporation**
3524 Canal Street
NEW ORLEANS, LOUISIANA  701139

NOTARY PUBLIC

Telephone: (504)588-1110
Facsimile: (504)588-1954
*Email: pgkehoejr@kehoejr.com*

July 9, 2020

24th Judicial District Court
Parish of Jefferson
P. O. Box 10
Gretna, LA 70054

FILED FOR RECORD 07/13/2020 15:00:56
Randi H. Prisco, DY CLERK
JEFFERSON PARISH, LA

RE:    Debra Bodden v. Pfizer, Inc., et al
24th JDC No.: 808-096 Division "C"
**NEW PETITION FOR DAMAGES**

Dear Clerk:

Enclosed please find the Petition for Damages which was fax filed on July 8, 2020. Further, enclosed please find the following:

1.    The original petition and 9 copies;
2.    Fax confirmation sheet;
3.    Civil Case Reporting Form;
4.    A check in the amount of $1,130.00 payable to the clerk; and
5.    A check in the amount of $106.08 payable to East Baton Rouge Sheriff.

**PLEASE NOTE THAT CITATIONS DO NOT HAVE TO BE ISSUED TO DEFENDANTS SANOFI OR GLAXOSMITHKLINE, PLC. WE WILL ONLY NEED A CLOCKED COPY OF THE PETITION FOR EACH IN ORDER FOR OUR OFFICE TO SERVE THROUGH THE HAGUE SERVICE CONVENTION.**
Sent 7-13-20 R.P.
Please return a conformed copy of the petition in the self-addressed stamped envelope enclosed.  Your assistance in this matter is appreciated.

Very truly yours,

*Patrick G. Kehoe, Jr./de*

PATRICK G. KEHOE, JR.

PGK;JR/de
Enclosures

**[ SERVICE COPY ]  /  [RETURN COPY]**

(101)  CITATION: PETITION FOR DAMAGES ;                    200715-5712-6

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

DEBRA BODDEN
    versus
PFIZER INC, BOEHRINGER INGELHEIM              Case: 808-096    Div: "C"
PHARMACEUTICALS INC, SANOFI, CHATTEM INC,     P 1 DEBRA BODDEN
SANOFI US SERVICES INC, SANOFI-AVENTIS US LLC,
GLAXOSMITHKLINE PLC, GLAXOSMITHKLINE LLC

To:  PFIZER INC
THROUGH ITS AGENT FOR SERVICE OF PROCESS
CT CORPORATION SYSTEM                         EBRS CK#20501 $106.08
3867 PLAZA TOWER DRIVE
BATON ROUGE LA 70816

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES  of which a true and correct copy accompanies this citation, or make an
appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for
the Parish of Jefferson, State of Louisiana, within FIFTEEN (15)  CALENDAR days after the
service hereof, under penalty of default.

This service was requested by attorney PATRICK G. KEHOE JR and was issued by the Clerk
of Court on the 15th day of July, 2020.

            /s/ Rachel A. Ponce
            Rachel A. Ponce, Deputy Clerk of Court for
            Jon A. Gegenheimer, Clerk of Court

_____SERVICE INFORMATION_____

(101)  CITATION: PETITION FOR DAMAGES ;                    200715-5712-6

Received:_____    Served:_____    Returned:_____

Service was made:
    ___ Personal              ___ Domiciliary _____

Unable to serve:
    ___ Not at this address    ___ Numerous attempts _____ times
    ___ Vacant                ___ Received too late to serve
    ___ Moved                 ___ No longer works at this address
    ___ No such address        ___ Need apartment / building number
    ___ Other _____

Service: $_____    Mileage: $_____    Total: $_____

Completed by:_____ # _____
                   Deputy Sheriff
Parish of: _____

Imaged 07/15/2020 11:11 - Signed: Deputy Clerk of Court /s/ Rachel A. Ponce

Thomas F. Donelon Courthouse : 200 Derbigny St. : Gretna LA 70053

**[ SERVICE COPY ]  /  [RETURN COPY]**

(101) CITATION: PETITION FOR DAMAGES ;                    200715-5713-4

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

DEBRA BODDEN
    versus
PFIZER INC, BOEHRINGER INGELHEIM          Case: 808-096    Div: "C"
PHARMACEUTICALS INC, SANOFI, CHATTEM INC,   P 1 DEBRA BODDEN
SANOFI US SERVICES INC, SANOFI-AVENTIS US LLC,
GLAXOSMITHKLINE PLC, GLAXOSMITHKLINE LLC

To:  CHATTEM INC
THROUGH ITS AGENT FOR SERVICE OF PROCESS
CORPORTION SERVICE COMPANY                 EBRS CK#20501 $106.08
501 LOUISIANA AVENUE
BATON ROUGE LA 70802


PARISH OF JEFFERSON


You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES  of which a true and correct copy accompanies this citation, or make an
appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for
the Parish of Jefferson, State of Louisiana, within FIFTEEN (15)  CALENDAR days after the
service hereof, under penalty of default.

This service was requested by attorney PATRICK G. KEHOE JR and was issued by the Clerk
of Court on the 15th day of July, 2020.


             /s/ Rachel A. Ponce
             Rachel A. Ponce, Deputy Clerk of Court for
             Jon A. Gegenheimer, Clerk of Court


_____SERVICE INFORMATION_____

(101) CITATION: PETITION FOR DAMAGES ;                    200715-5713-4

Received:_____   Served:_____   Returned:_____

Service was made:
    ___ Personal       ___ Domiciliary _____

Unable to serve:
    ___ Not at this address   ___ Numerous attempts _____ times
    ___ Vacant            ___ Received too late to serve
    ___ Moved            ___ No longer works at this address
    ___ No such address     ___ Need apartment / building number
    ___ Other _____

Service: $_____   Mileage: $_____   Total: $_____

Completed by:_____ # _____
              Deputy Sheriff
Parish of: _____

Imaged 07/15/2020 11:11 - Signed: Deputy Clerk of Court /s/ Rachel A. Ponce

**[ SERVICE COPY ]  /  [RETURN COPY]**

(101)  CITATION: PETITION FOR DAMAGES ;                    200715-5714-2

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

DEBRA BODDEN
    versus
PFIZER INC, BOEHRINGER INGELHEIM          Case: 808-096    Div: "C"
PHARMACEUTICALS INC, SANOFI, CHATTEM INC,     P 1 DEBRA BODDEN
SANOFI US SERVICES INC, SANOFI-AVENTIS US LLC,
GLAXOSMITHKLINE PLC, GLAXOSMITHKLINE LLC

To:  GLAXOSMITHKLINE LLC
CORPORATION SERVICE COMPANY
501 LOUISIANA AVENUE                    EBRS CK#20501 $106.08
BATON ROUGE LA 70802

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES  of which a true and correct copy accompanies this citation, or make an
appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for
the Parish of Jefferson, State of Louisiana, within FIFTEEN (15)  CALENDAR days after the
service hereof, under penalty of default.

This service was requested by attorney PATRICK G. KEHOE JR and was issued by the Clerk
of Court on the 15th day of July, 2020.

/s/ Rachel A. Ponce
Rachel A. Ponce, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk of Court

_____SERVICE INFORMATION_____

(101)  CITATION: PETITION FOR DAMAGES ;                    200715-5714-2

Received:_____   Served:_____   Returned:_____

Service was made:
    ___ Personal           ___ Domiciliary _____

Unable to serve:
    ___ Not at this address     ___ Numerous attempts _____ times
    ___ Vacant            ___ Received too late to serve
    ___ Moved            ___ No longer works at this address
    ___ No such address       ___ Need apartment /  building number
    ___ Other _____

Service: $_____   Mileage: $_____   Total: $_____

Completed by:_____ # _____
                 Deputy Sheriff
Parish of: _____

Imaged 07/15/2020 11:11 - Signed: Deputy Clerk of Court /s/ Rachel A. Ponce

**[ SERVICE COPY ]   /   [RETURN COPY]**

(101)  CITATION: PETITION FOR DAMAGES ;                    200715-5718-3

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

DEBRA BODDEN
    versus
PFIZER INC, BOEHRINGER INGELHEIM              Case: 808-096     Div: "C"
PHARMACEUTICALS INC, SANOFI, CHATTEM INC,     P 1 DEBRA BODDEN
SANOFI US SERVICES INC, SANOFI-AVENTIS US LLC,
GLAXOSMITHKLINE PLC, GLAXOSMITHKLINE LLC

 To:  BOEHRINGER INGELHEIM PHARMACEUTICALS
INC
900 RIDGEBURY ROAD                            LA Long Arm
RIDGEFIELD CT 06877

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES  of which a true and correct copy accompanies this citation, or make an
appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for
the Parish of Jefferson, State of Louisiana, within THIRTY (30)  CALENDAR days after the
return of service hereof, under penalty of default.

This service was requested by attorney PATRICK G. KEHOE JR and was issued by the Clerk
of Court on the 15th day of July, 2020.

                /s/ Rachel A. Ponce
                Rachel A. Ponce, Deputy Clerk of Court for
                Jon A. Gegenheimer, Clerk of Court

_____SERVICE INFORMATION_____

(101)  CITATION: PETITION FOR DAMAGES ;                    200715-5718-3

Received:_____   Served:_____   Returned:_____

Service was made:
    ___ Personal              ___ Domiciliary _____

Unable to serve:
    ___ Not at this address    ___ Numerous attempts _____ times
    ___ Vacant                 ___ Received too late to serve
    ___ Moved                  ___ No longer works at this address
    ___ No such address        ___ Need apartment / building number
    ___ Other _____

Service: $_____     Mileage: $_____     Total: $_____

Completed by:_____# _____
              Deputy Sheriff
Parish of: _____

Imaged 07/15/2020 11:14 - Signed: Deputy Clerk of Court /s/ Rachel A. Ponce


**[ SERVICE COPY ]  /  [RETURN COPY]**

(101) CITATION: PETITION FOR DAMAGES ;                                          200715-5719-1

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

DEBRA BODDEN
    versus
PFIZER INC, BOEHRINGER INGELHEIM      Case: 808-096   Div: "C"
PHARMACEUTICALS INC, SANOFI, CHATTEM INC,   P 1 DEBRA BODDEN
SANOFI US SERVICES INC, SANOFI-AVENTIS US LLC,
GLAXOSMITHKLINE PLC, GLAXOSMITHKLINE LLC

To: SANOFI US SERVICES INC
55 CORPORATE DRIVE               LA Long Arm
BRIDGEWATER NJ 08807

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES of which a true and correct copy accompanies this citation, or make an
appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for
the Parish of Jefferson, State of Louisiana, within THIRTY (30) CALENDAR days after the
return of service hereof, under penalty of default.

This service was requested by attorney PATRICK G. KEHOE JR and was issued by the Clerk
of Court on the 15th day of July, 2020.


/s/ Rachel A. Ponce
Rachel A. Ponce, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk of Court


_____SERVICE INFORMATION_____

(101) CITATION: PETITION FOR DAMAGES ;                                          200715-5719-1

Received:_____ Served:_____ Returned:_____

Service was made:
    ___ Personal        ___ Domiciliary _____

Unable to serve:
    ___ Not at this address    ___ Numerous attempts _____ times
    ___ Vacant           ___ Received too late to serve
    ___ Moved          ___ No longer works at this address
    ___ No such address     ___ Need apartment / building number
    ___ Other _____

Service: $_____ Mileage: $_____ Total: $_____

Completed by:_____ # _____
              Deputy Sheriff
Parish of: _____

Imaged 07/15/2020 11:14 - Signed: Deputy Clerk of Court /s/ Rachel A. Ponce

**[ SERVICE COPY ]  /  [RETURN COPY]**

(101) CITATION: PETITION FOR DAMAGES ;                    200715-5720-9

24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

DEBRA BODDEN
    versus
PFIZER INC, BOEHRINGER INGELHEIM              Case: 808-096    Div: "C"
PHARMACEUTICALS INC, SANOFI, CHATTEM INC,     P 1 DEBRA BODDEN
SANOFI US SERVICES INC, SANOFI-AVENTIS US LLC,
GLAXOSMITHKLINE PLC, GLAXOSMITHKLINE LLC

To:  SANOFI-AVENTIS US LLC
55 CORPORATE DRIVE                            LA Long Arm
BRIDGEWATER NJ 08807

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR DAMAGES of which a true and correct copy accompanies this citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of Louisiana, within THIRTY (30) CALENDAR days after the return of service hereof, under penalty of default.

This service was requested by attorney PATRICK G. KEHOE JR and was issued by the Clerk of Court on the 15th day of July, 2020.

/s/ Rachel A. Ponce
Rachel A. Ponce, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk of Court

_____SERVICE INFORMATION_____

(101) CITATION: PETITION FOR DAMAGES ;                    200715-5720-9

Received:_____   Served:_____   Returned:_____

Service was made:
    ___ Personal          ___ Domiciliary _____

Unable to serve:
    ___ Not at this address    ___ Numerous attempts _____ times
    ___ Vacant               ___ Received too late to serve
    ___ Moved                ___ No longer works at this address
    ___ No such address      ___ Need apartment / building number
    ___ Other _____

Service: $_____    Mileage: $_____    Total: $_____

Completed by:_____ # _____
                Deputy Sheriff
Parish of: _____

Imaged 07/15/2020 11:14 - Signed: Deputy Clerk of Court /s/ Rachel A. Ponce